UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MISTY C.,

                                        Plaintiff,

v.                                                      5:20-CV-1538
                                                        (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

APPEARANCES:                                OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC         KENNETH HILLER, ESQ.
  *Attorneys for Plaintiff*                 JUSTIN GOLDSTEIN, ESQ.
6000 North Bailey Avenue – Suite 1A
Amherst, New York 14226

U.S. SOCIAL SECURITY ADMIN.                 RONALD W. MAKAWA, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>MEMORANDUM-DECISION AND ORDER</u>

Plaintiff Misty C. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for Supplemental Security Income ("SSI").  (Dkt. No.

1.)  This case has proceeded in accordance with General Order 18 of this Court which sets forth

the procedures to be followed when appealing a denial of Social Security benefits.  Both parties

have filed briefs.  (Dkt. Nos. 12, 17.)  Oral argument was not heard.  Pursuant to 28 U.S.C. §

636(c), the parties have consented to the disposition of this case by a Magistrate Judge.  (Dkt.

Nos. 4, 7.)  For the reasons discussed below, the Commissioner's decision denying Plaintiff's disability benefits is affirmed.

## I.       BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on May 23, 1984.  (Administrative Transcript at 22, 38, 178.[1])  She dropped out of school after ninth grade and does not have a GED.  *Id.* at 40, 150.  She has a limited employment history, including short periods working as a store clerk, fast food service maintenance worker, and laborer.  *Id.* at 41, 151.  She reported leaving her last employment after an orientation because she was anxious.  *Id.* at 40.

Plaintiff reported a history of mental health treatment, including hospitalization and medication, as well as addiction treatment.  *Id.* at 153-56.  In her application for benefits, she alleged disabling conditions including post-traumatic stress disorder ("PTSD"), anxiety, depression, thyroid problem, chronic pain, substance abuse, and suicidal ideations.  *Id.* at 149.  At the time of her application, Plaintiff used psychotropic medications for her anxiety and depression, and she attended a daily methadone clinic.  *Id.* at 43, 192.

On August 28, 2018, Plaintiff filed an application for SSI alleging disability beginning April 29, 2015.  *Id.* at 129-134.  Plaintiff subsequently amended the onset date to August 28, 2018.  *Id.* at 147.  Her application was initially denied on November 26, 2018.  *Id.* at 57-65.  Thereafter, Plaintiff filed a written request for a hearing, which was held on December 27, 2019, before Administrative Law Judge ("ALJ") David Romeo; Plaintiff and vocational expert ("VE") James Soldner testified.  *Id.* at 34-56.  On January 22, 2019, the ALJ issued a written decision

---

[1]  The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.  Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

finding Plaintiff was not disabled under the Social Security Act.  *Id.* at 10-24.  On October 14, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  *Id.* at 1-4.  Plaintiff timely commenced this action on December 11, 2020.  (Dkt. No. 1.)

## II.     RELEVANT LEGAL STANDARDS

### A.     Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

---

[2]  While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*Yuckert*, 482 U.S. 137, 140-42 (1987).  Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working.  *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

4

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence" is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision.  *Rutherford*, 685 F.2d at 62 (2d Cir. 1982).

### C.      Standards for ALJ Evaluation of Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for

claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" forming the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the

---

[3]  Plaintiff's application was filed August 28, 2018.  (T. 129-41.)  Thus, the new regulations apply in her case.

medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

### D.  Standards for ALJ Evaluation of Symptoms

In evaluating a plaintiff's residual functional capacity ("RFC") for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "subregulatory policy" because the regulations themselves do not use the term.  SSR 16-3p, 81 FR at

14167.  Instead, symptom evaluation tracks the language of the regulations.[4]  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[5]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning

---

[4]  The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character."  SSR 16-3p, 81 FR at 14167.  The Court will remain consistent with the terms as used by the Commissioner.

[5]  The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) which was superseded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination.  *Cichocki*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination.  *Id.*; *see also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'"  *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## III.    THE ALJ'S DECISION

In his January 22, 2020, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  *Id.* at 10-24.  First, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date.  *Id.* at 12.  The ALJ next determined Plaintiff has the following severe impairments: "post-traumatic stress disorder (PTSD), major depressive disorder, generalized anxiety disorder, and borderline personality disorder."  *Id.* at 12.  The ALJ then determined Plaintiff does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  *Id.* at 14.

The ALJ then found, based on the above-stated impairments, Plaintiff has the RFC to perform "a full range of work at all exertional levels" with certain limitations, stating:

> She cannot tolerate high-volume output, very short deadlines, or high levels of decision.  She can tolerate a low-level of work pressure, defined as work not requiring multitasking, very detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, no more than occasional changes in work setting; no more than occasional contact with

> supervisors, coworkers, or the public.  She is able to [get] along
> with coworkers and respond to criticism from supervisors without
> exhibiting behavioral extremes such as anger outbursts or leaving
> the work site.  She can understand, remember, and carry out simple
> instructions and make simple work-related decisions.  She can
> sustain an ordinary routine without special supervision.

*Id.* at 16.

Next, the ALJ found Plaintiff has no past relevant work.  *Id.* at 22.  Based upon the RFC

and the VE testimony, the ALJ determined Plaintiff is capable of performing other jobs existing

in significant numbers in the national economy.  *Id.* at 22-23.  Thus, the ALJ determined Plaintiff

has not been under a disability, as defined in the Social Security Act, from August 28, 2018,

through the date of the ALJ's decision.  *Id.* at 23.

## IV.    THE PARTIES' CONTENTIONS

Plaintiff contends the RFC is not supported by substantial evidence because the ALJ: (1)

failed to properly evaluate the medical opinion evidence concerning Plaintiff's mental

limitations; and (2) failed to properly consider Plaintiff's subjective complaints.  (Dkt. No. 12 at

9-25.)  In response, the Commissioner contends the ALJ's decision applies the correct legal

standards and is supported by substantial evidence.  (Dkt. No. 17 at 4-18.)

## V.     THE COURT'S ANALYSIS

### A.    Substantial Evidence Supports the ALJ's Analysis of the Record Evidence and Plaintiff's RFC

A claimant's RFC is the most he or she can do despite his or her limitations.  20 C.F.R. §

404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained

work activities in an ordinary work setting on a regular and continuing basis.  A regular and

continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."

*Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d

45, 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Id*. (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'"  *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

It is the province of the ALJ to resolve genuine conflicts in the record.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  However, the Commissioner need not "reconcile explicitly every shred of medical testimony."  *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts between the various medical opinions and credited those portions of the medical opinions deemed most consistent with and supported by Plaintiff's overall treatment records and activities and made an RFC finding consistent with the overall record.  *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding consistent with the record as a whole).  In light of the ALJ's detailed analysis of Plaintiff's medical history, the relevant medical opinions, Plaintiff's testimony, and her activities of daily living, this Court concludes the RFC determination was supported by substantial evidence, as summarized below.

### 1.      The ALJ's RFC Properly Considered Plaintiff's Mental Impairments

The ALJ denied Plaintiff's request for disability insurance benefits at the final step of the five-step sequential evaluation process, concluding she could perform jobs that exist in sufficient numbers in the national economy after hearing the testimony of the VE.  (T. at 22-24, 53-55.) Plaintiff disputes this conclusion on the grounds that the ALJ's RFC determination is unsupported by substantial evidence.  (*See generally* Dkt. No. 12.)  Plaintiff specifically challenges the ALJ's determinations concerning her capacity (1) to tolerate high-volume work output, very short deadlines, or high levels of decision; (2) to perform multitasking, detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, no more than occasional changes in the workplace; (3) to interact with supervisors, coworkers, or the public; (4) to understand, remember, and carry out simple instructions and make simple work-related decisions; and (5) to sustain an ordinary routine without special supervision. *Id.*  In short, Plaintiff disputes the entirety of the non-exertional limitations set forth in the RFC.

In support of that challenge, Plaintiff argues the ALJ erred in evaluating the medical opinions of treating physician, Tolani Ajagbe, M.D., who managed her psychotropic medications at the Crouse Health Chemical Dependency outpatient clinic where Plaintiff was enrolled in the Crouse Opioid Treatment Program (collectively "OTP"); and Jill Kaptan, L.M.H.C. ("Ms. Kaptan") of CIRCARE.[6]  (Dkt. No. 12 at 14-23; *see also* T. at 348, 400, 1498, 1505.)  Other mental health opinions in the record include those of Karen Wickert, N.P. ("NP Wickert") of the OTP; consultative examiner Dante Alexander, Psy.D. ("Dr. Alexander"); and state agency record reviewer C. Walker, Ph.D. ("Dr. Walker").  (T. at 61-63, 338, 1494, 1496, 1500.)

---

[6] Some places in the record and in the ALJ's decision cite her sur-name as "Kaplan;" however, per this provider's source statement, "Kaptan" is the correct spelling.  (T. at 402.)

This Court's analysis centers on the ALJ's alleged legal errors, and whether they improperly influenced his conclusions about Plaintiff's non-exertional functional limitations. For the following reasons, the Court concludes the ALJ properly evaluated all the medical opinions, including those of Dr. Ajagbe and Ms. Kaptan, and the other evidence of record including all Plaintiff's mental health treatment and her daily activities.

Initially, the Court notes Plaintiff appears to have mis-read the ALJ's RFC finding.  (Dkt. No. 12 at 12.)  The RFC provides Plaintiff can tolerate a low-level of work pressure, defined as work *not* requiring multitasking, very detailed job tasks, significant independent judgment, very short deadlines, or teamwork in completing job tasks.  (T. at 16, 53.)  The RFC also provides Plaintiff *cannot* tolerate high-volume output, very short deadlines, or high levels of decision.  *Id.* at 16, 53 (mis-transcribing "decision" as "precision").

## 2.  Dr. Ajagbe's Opinions

Dr. Ajagbe of the OTP completed two Employability Assessments for Onondaga County Department of Social Services ("DSS").  In his report of July 18, 2018, he listed Plaintiff's diagnoses as severe major depressive disorder, generalized anxiety disorder, and PTSD, chronic but no acute exacerbation.  *Id.* at 1498.  With regard to Plaintiff's mental functional limitations, he found "no evidence of limitation" in every single category listed on the form.  *Id.*  He concluded that Plaintiff should engage in "no activity except treatment or rehabilitation" for one to three months, but found Plaintiff "not permanently disabled."  *Id.* at 1499.  He noted Plaintiff's treatment schedule included monthly psychiatric appointments, bi-weekly individual counseling, and Monday through Saturday dosing (of methadone) at the OTP.  *Id.*

In his report dated March 4, 2019, Dr. Ajagbe listed Plaintiff's diagnoses as opioid use disorder with daily methadone maintenance and ongoing counseling, stimulant and cannabis use

disorders in remission, tobacco use disorder, major depressive disorder in partial remission, generalized anxiety disorder, PTSD disorder, and noted counseling and medication therapies were ongoing.  *Id.* at 1505.  With regard to Plaintiff's mental functional limitations, Dr. Ajagbe found no evidence of limitation in Plaintiff's ability to maintain basic standards of personal hygiene and grooming; moderate limitations in her ability to (a) follow, understand, and remember simple instructions, (b) perform low stress, simple and complex tasks independently, and (c) interact with others and maintain socially appropriate behaviors without exhibiting behavior extremes; and severe limitations in her ability to (a) maintain a schedule and attend to a daily routine, (b) maintain attention and concentration for rote tasks, and (c) function in a work setting.  *Id.*  Plaintiff's treatment schedule was noted as Monday through Friday for dosing of methadone and monthly for counseling or when in crisis.  *Id.* at 1506.  Dr. Ajagbe noted Plaintiff appeared "permanently disabled."  *Id.*

The ALJ found Dr. Ajagbe's March 2019 opinion "partially persuasive" because his own treatment notes did not support the extent of the limitations he opined.  *Id.* at 20.  The ALJ correctly noted that Dr. Ajagbe's "treatment notes reflect some reported symptoms, but he did not conduct mental status exams or provide any findings to support his opinion."  *Id.*; *see also* 1458, 1465, 1468.  Plaintiff argues the ALJ failed to explain how the evidence of record supports the RFC finding or his assessment of Dr. Ajagbe's opinion, and the ALJ substituted his own lay opinion.  (Dkt. No. 12 at 11, 14-18.)  The Court disagrees with Plaintiff's position and finds the ALJ properly explained his review of Dr. Ajagbe's opinion, and further finds the extreme limitations in the March 2019 opinion are not fully supported by objective medical evidence or other record evidence, and those extreme limitations are not consistent with the medical evidence in the record.  *See generally* 20 C.F.R. §§ 404.1520c(c)(1)-(2).  The ALJ did not err in assigning

partial persuasive value to Dr. Ajagbe's opinion, nor did he substitute his own lay opinion since a review of the entire record supports the ALJ's RFC finding.  (*See* T. at 20.)

First, objective medical evidence supports Dr. Ajagbe's opinion that Plaintiff had moderate limitations in her ability to follow, understand, and remember simple instructions; perform low stress, simple and complex tasks independently; and interact with others and maintain socially appropriate behavior without exhibiting behavioral extremes.  20 C.F.R. § 404.1520c(c)(1); *see also* id. § 404.1513(a)(1) (defining "Objective medical evidence").  The regulations identify four categories of mental functioning that the Commissioner must rate.  *Id*. § 404.1520a(c)(3); *see also id.* § 404.1520a ("when we evaluate the severity of mental impairments for adults . . . we must follow a special technique at each level in the administrative review process.  We describe this special technique in paragraphs (b) through (e) of this section.").  When the Commissioner rates an individual's degree of limitation in these areas of mental functioning, it will use a five-point scale: none, mild, moderate, marked, and extreme.  *Id.* § 404.1520a(c)(4).  An individual with moderate mental functioning limitations has a "fair" ability to function "independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(c); *see also id.* at 12.00(F)(2)(b), (d) (defining mild mental functioning limitations as "slightly" limiting and marked mental functioning limitations as "seriously" limiting).

Dr. Ajagbe's treatment records, and those of NP Wickert of the same OTP practice, document Plaintiff's mental status exams were largely unremarkable.  Records of treatment between May 26, 2016, and September 9, 2018, note Plaintiff's attitude, appearance, and behavior as normal.  (*See generally* T. at 332-36; T. at 333 ("calm, cooperative, pleasant, well-groomed, casual, well-kept"); T. at 335 (normal).)  Her speech, thought, and perception were

documented as "spontaneous, well articulated, normal rate, tone, logical," *id.* at 333, and normal, *id.* at 335.  Her mood and affect were noted as "'stressed', slightly anxious at baseline," *id.* at 333, and normal, *id.* at 335.  Her attention and concentration were noted as "fair."  *Id.* at 335.  Regarding orientation, she was reported as "fully oriented," *id.* at 333, and normal, *id.* at 335.  Her memory, information, and ability to perform calculations, serial sevens, etc., were either not documented or found as normal.  *Id.* at 333, 335.  Her insight and judgment were recorded as "fair," *id.* at 333, and "good," *id.* at 335.  Plaintiff had no problems with activities of daily living. *Id.* at 333.

On March 14, 2019, Dr. Ajagbe noted Plaintiff's subjective complaints regarding depression, anxiety, PTSD, and documented that Plaintiff "terminated services with her therapist 2 months ago and is currently in the process of getting a new therapist" and that she remained "engaged in the OTP program."  *Id*. at 1468.  He did not document a mental status exam.  *Id.*  On April 16, 2019, Dr. Ajagbe again did not document a mental status exam, but noted Plaintiff denied being depressed and she reported "adequate sleep, energy, appetite with enough motivation to get through her day to day activities."  *Id.* at 1465.  She remained "engaged in the OTP program."  *Id*.  On November 11, 2019, Dr. Ajagbe noted Plaintiff was anxious and depressed about her daughter who had run away from the Hillside Children's Center.  *Id.* at 1458.  Dr. Ajagbe again charted Plaintiff's various subjective complaints regarding symptoms of depression and anxiety, *id.* at 1458; he reported she "remains engaged in the OTP Methadone Program," *id.* at 1459; but he did not document a mental status exam.  *See id.* at 1458-59.  Thus, Dr. Ajagbe's treatment notes and other notes from the OTP practice do not support and are not consistent with his extreme limitations.

The ALJ's rejection of the more extreme limitations set forth in Dr. Ajagbe's March 4, 2019, DSS Employability Assessment, are likewise not consistent with other evidence of record including NP Wickert's functional assessments during the relevant time.  NP Wickert also completed DSS Employability Assessments on July 17, 2017, *id.* at 1494, January 25, 2018, *id.* at 1496, and December 17, 2018, *id.* at 1500.  In each of those reports, NP Wickert noted that Plaintiff had no evidence of limitations in any mental work functions.  *Id.* at 1494, 1496, 1500.

With the exception of a mental source statement from Ms. Kaptan of CIRCARE, *id.* at 400-02, discussed below, a review of other medical records regarding Plaintiff's mental status since the April 15, 2015, date of disability shows largely unremarkable findings which do not support the severe limitations in functioning opined by Dr. Ajagbe.  For example, Sarah Vergara ("Ms. Vergara"), another mental health counselor at CIRCARE, did a mental health status evaluation as part of a complete assessment upon the referral of Ms. Kaptan.  *Id.* at 1190-93.  Ms. Vergara reported Plaintiff's appearance, build/stature, posture, activity, perception, thought content, cognition, insight, and judgment were all within normal limits.  *Id.*  Ms. Vergara found Plaintiff to have average eye contact; she was cooperative; her mood was euthymic; her affect full; her speech clear; and her thought processes were concrete and logical.  *Id.*  Her intelligence was estimated as average, and no delusions or risks were reported or observed.  *Id.*

Other mental health records show Plaintiff attended an initial "extended assessment" at Helio Health on October 10, 2017, with Fred Hintz who noted Plaintiff stated, "she is not interested in mental health treatment, is only seeking a provider for [mental health] meds."  *Id.* at 355.  Plaintiff was evaluated at Hutchings Psychiatric Center on September 5, 2018, by psychiatric resident Sarah Heitner, M.D., who performed a mental status exam.  *Id.* at 310-13.  Dr. Heitner reported Plaintiff was appropriately dressed with good grooming; she was

17

cooperative; she had good eye contact; her thought process/content was linear, logical, and goal directed; her mood was okay; her affect was euthymic, congruent; she was oriented in all spheres; and she had good insight and judgment.  *Id.* at 311.  While Dr. Heitner noted Plaintiff had some psychomotor agitation of restlessness and foot tapping, she did not have delusions, paranoia, or suicidal/homicidal ideation.  *Id.*  Despite Dr. Heitner recommending continued therapy sessions, *id.* at 313, Plaintiff was listed as a "no call/no show" multiple times, *id.* at 330, 331, 374, 377, 379-91, and was ultimately discharged.  *Id.* at 391, 393.  Multiple mental health status exams at St. Joseph's Hospital Health Center's Comprehensive Psychiatric Emergency Program ("CPEP") between November of 2015 and June of 2019 show almost completely normal findings in all areas, except Plaintiff's insight, judgment, concentration, attention span, and fund of knowledge are listed as mainly fair, but occasionally listed as limited, poor, or good. *Id.* at 1376, 1399, 1412, 1423 (limited insight and judgment; poor concentration and attention), 1432-33 (good fund of knowledge, concentration, and attention span), 1443 (same).

Consultative examiner Dr. Alexander's mental status exam from November 19, 2018, was also normal except Plaintiff's affect was mildly depressed; her mood was mildly dysthymic; her attention and concentration were mildly impaired as were her recent and remote memory skills; and her insight and judgment were fair.  *Id.* at 339-40.  The ALJ found his report somewhat persuasive, but also found Dr. Alexander's overall functional opinions only somewhat persuasive because they were not fully consistent with the record evidence as a whole which showed further mental limitations than those opined by Dr. Alexander.  *Id.* at 19, *see also id.* at 340-41.  The ALJ made essentially the same findings regarding the opinion of state agency psychological consultant Dr. Walker who opined Plaintiff's mental impairments are non-severe. *Id.* at 21, 61-63.  The ALJ also found this opinion somewhat persuasive since it was somewhat

consistent with the record as a whole and supported by her analysis of the record; however, the ALJ noted Dr. Walker overestimated Plaintiff's mental functioning. *Id.*

The Court also notes the conclusion by Dr. Ajagbe that Plaintiff was disabled made in the context of a DSS evaluation is not binding on the ALJ in the Social Security context. Under 20 C.F.R. § 404.1504, for claims filed on or after March 27, 2017, the Commissioner "will not provide any analysis in [his] determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." However, the ALJ must nonetheless still "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision" in the record for the social security disability claim. 20 C.F.R. § 404.1504. An ALJ satisfies this obligation by discussing all the relevant medical records as part of his or her RFC determination. *See Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *9 (N.D.N.Y. Oct. 1, 2020). The ALJ's decision indicates a detailed review of Plaintiff's treatment records, thus meeting his obligation. (T. at 13-14, 17-21.)

### 3. Ms. Kaptan's Opinion

The ALJ found Ms. Kaptan's November 4, 2019, source statement unpersuasive. *Id.* at 20-21, 400-02. In looking at supportability, the ALJ correctly noted the administrative record did not contain any treatment notes from Ms. Kaptan, and her opinions were not consistent with the record as a whole. *Id.* at 21. The ALJ further noted Plaintiff consistently failed to show up for appointments with Ms. Kaptan. *Id.* Plaintiff argues the ALJ erred in evaluating her opinion because the ALJ relied on Plaintiff's noncompliance and a gap in treatment records from Ms. Kaptan to discount her opinion. (Dkt. No. 12 at 18-20.) For the following reasons, the Court finds these arguments meritless.

First, Ms. Kaptan's source statement indicates she was associated with CIRCARE.  (T. at 402.)  However, the CIRCARE records do not contain any progress notes authored by her.  *Id.* at 1174-1208.  Rather, those notes are authored by Ms. Vergara, whose mental status exam of Plaintiff documents normal findings.  *See id.* at 1190-93.  Therefore, Ms. Kaptan's extreme opinions which include (a) that Plaintiff has no useful ability to function in completing a normal workday and workweek without psychologic interruptions; and (b) that she is unable to meet competitive standards in maintaining attention for a two hour segment, maintain regular attendance and punctuality, sustain an ordinary routine without special supervision, respond appropriately to changes in a work setting, deal with normal work stress, or travel in an unfamiliar place have no support and are not consistent with the CIRCARE records.  *Compare id.* at 401, 402, *with id.* at 1190-93.

Second, the ALJ certainly did not err in considering Plaintiff's activities including whether she attends medical and therapy appointments and follows treatment recommendations.  *See, e.g., Williams v. Colvin*, 98 F. Supp. 3d 614, 632-33 (W.D.N.Y. 2015) (ALJ's consideration of mental health treatment records showing claimant's non-compliance and missed appointments proper in assessing opinion evidence); *Christian J. v. Comm'r of Soc. Sec.*. No. 6:18-CV-1004 (ATB), 2019 WL 6840130, at *8 (N.D.N.Y. Dec. 16, 2019) (finding it proper for ALJ to cite treatment history and missed appointments in rejecting opinion).  Moreover, the ALJ asked Plaintiff at the hearing why she did not attend therapy appointments, and Plaintiff indicated she did not want to talk and is uncomfortable.  (T. at 47; *see also* SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) (ALJ to consider possible reasons why claimant "[m]ay not comply with treatment or seek treatment consistent with the degree of his or her complaints.").)

Moreover, Plaintiff's claim the ALJ should have further developed the record because

20

there were no treatment notes from CIRCARE other than the February 13, 2018, intake evaluation, nor any therapy notes for treatment with Ms. Kaptan, is incorrect.  (Dkt. No. 12 at 18.)  Plaintiff has the burden to provide evidence of disability and functional limitations at the first four steps of the sequential evaluation.  *See* 20 C.F.R. § 404.1512(a).  Additionally, Plaintiff was represented by a licensed representative, Matthew F. Nutting, at the hearing.  (T. at 34.)  The ALJ specifically inquired of the representative whether there was any outstanding evidence, and Mr. Nutting responded: "The record is complete."  *Id.* at 37; s*ee also Allen v. Comm'r of Soc. Sec.*, No. 1:16-CV-00273 (MAT), 2017 WL 604421, at *5 (W.D.N.Y. Feb. 15, 2017) (noting "although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record – indeed, to exhort the ALJ that the case is ready for decision  – and later fault the ALJ for not performing a more exhaustive investigation.") (citing *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008)).

In summary, and taking all the relevant factors into account, the ALJ marshaled substantial evidence to find Dr. Ajagbe's opinion only partially persuasive and the opinion of Ms. Kaptan unpersuasive despite their treatment relationship with Plaintiff.  The ALJ also correctly determined, based upon substantial evidence, that the opinions of Dr. Alexander and Dr. Walker were somewhat persuasive.  "[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."  *Gamble v. Comm'r of Soc. Sec.*, No. 1:15-CV-0352 (GTS/WBC), 2016 WL 4491710, at *5 (N.D.N.Y. July 25, 2016) (quoting *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010)), *report-recommendation adopted by* 2016 WL 4487780 (N.D.N.Y. Aug. 25, 2016); *see also Jacqueline L. v. Comm'r of Soc. Sec.*, No. 6:19-CV-6786, 2021 WL 243099, at *6 (W.D.N.Y. Jan. 26, 2021) ("[T]he new

regulations eliminate the "treating physician rule," and the opinion of a consultative examiner

may override the opinion of a treating physician, particularly where the opinion of the

consultative examiner is better supported by the record.").

**B.      The ALJ Properly Considered Plaintiff's Daily Activities and Subjective
         Complaints**

Plaintiff claims it was improper for the ALJ to consider evidence of her daily activities

because he substituted his own judgment for that of the treating physician.  (Dkt. No. 12 at 21-

22.)  She does not explain how the ALJ erred when evaluating evidence of her daily activities,

nor does she explain how the ALJ's evaluation of that evidence improperly impacted the RFC

determination.  *See id.*

Under the regulations, the ALJ was required to consider evidence of Plaintiff's daily

activities when evaluating the medical opinion evidence.  *See* 20 C.F.R. § 404.1520c(c)(2);

*Vellone v. Saul*, 1:20-cv-00261 (RA)(KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021).

He was also required to consider Plaintiff's daily activities when evaluating the intensity,

persistence, and limiting effects of her symptoms.  *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-

3P, 2017 WL 5180304, at *7-8.  These considerations, as well as evidence of Plaintiff's daily

activities, inform the ALJ's RFC determination.  *See* 20 C.F.R. §§ 404.1545(a)(3), (e).

The ALJ concluded Plaintiff's daily activities as described by her "are not limited to the

extent one would expect, given the complaints of disabling symptoms and limitations."  (T. at

21.)  He also noted the medical records did not "entirely support" her allegations of impairments.

*Id.* at 22.  Plaintiff claims this consideration—and the resulting RFC determination—was

improper.  (Dkt. No. 12 at 21-25.)  Despite Plaintiff's contrary arguments, the ALJ was required

to consider Plaintiff's daily activities and all of the medical evidence when assessing her RFC.

*See* 20 C.F.R. §§ 404.1545(a)(3), (e).  The ALJ did so, and substantial evidence supports his

RFC determination.  (T. at 21-22.)  Stated differently, the ALJ properly considered evidence of Plaintiff's daily activities and all the medical evidence of record and substantial evidence supports his conclusion that she had the RFC to perform a full range of work at all exertional levels, with the specific non-exertional limitations that account for her mental functioning.

The ALJ properly considered Plaintiff indicated in her function report that she had no problems with personal care; she could take care of her cat; she could shop for food and clothes when she had to; she cooked simple meals daily; she could do housework and laundry; she was able to walk and ride in a car; she watched TV, used the internet, and did crafts; she could pay bills and handle money; and she could go to the OTP program on all weekdays.  *Id*. at 158-62. She reported that she got along with her family; she could finish what she started; she could follow spoken and written instructions; and she could travel short distances by herself.  *Id.* at 163-65, 168.

Mental status exams, as outlined above, showed she had depression and anxiety, mildly impaired attention, concentration, and memory, and some fair insight and judgment.  *Id.* at 311, 339-40, 1376, 1399, 1412, 1423.  The records also showed she was cooperative, calm, alert, oriented in all spheres, appropriately dressed with good grooming, good eye contact, normal speech, logical thought processes, and she was goal directed.  *Id.* at 61-63, 332-36, 1190-93, 1376, 1399, 1412, 1432-33, 1443.  She consistently missed mental health appointments despite providers' urging her to be compliant.  *Id.* at 330, 331, 335, 374, 377, 379-91, 1468.  At the time of her hearing with the ALJ, Plaintiff testified that she missed appointments because she did not want the talk therapy.  *Id.* at 47.  She testified she does some grocery shopping, and talks to friends, watches TV, cleans the house, schedule appointments, and goes to the OTP.  *Id*. at 47-49.  This evidence additionally supports the ALJ's conclusion that Plaintiff has the RFC to

perform a full range of work at all exertional levels, with the non-exertional limitations as determined by the ALJ.  *Id*. at 16, 21-22.

Thus, the Court finds the ALJ properly considered Plaintiff's daily activities when evaluating the persuasive value of medical opinions, when determining the intensity, persistence, and limiting effects of Plaintiff's symptoms, and when determining her RFC.  *See id.*  Thus, the Court further concludes substantial evidence supports the ALJ's RFC determination.

All in all, Plaintiff's challenge regarding the ALJ's mental RFC determination is premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about Plaintiff's functional limitations and the potential exaggeration of her symptoms.  This Court will not reweigh the evidence presented to the ALJ.  *See Warren v. Comm'r of Soc*. Sec., No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 642 (2d Cir. 1983)).  Accordingly, the Court finds the ALJ's RFC determination is supported by substantial evidence.

Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the Social Security Act.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**.


Dated: March 28, 2022
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

25